**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GRETTON LTD.,

Petitioner,

v.

REPUBLIC OF UZBEKISTAN,

Respondent.

Civil Action No. 18-1755 (JEB)

## MEMORANDUM OPINION

Petitioner Gretton Ltd. seeks to enforce a foreign arbitral award assessed against the

Republic of Uzbekistan. Gretton itself, however, never had any direct dealings with Uzbekistan.

Rather, the dispute arose between the Central Asian country and a company called Oxus Gold,

PLC over Oxus's investments in two gold-mining operations there. Although the underlying

Award is still working its way through direct-appeal proceedings in France, Gretton — Oxus's

litigation funder and assignee of the Award's proceeds — has clamored to have its day in court in

the United States. Uzbekistan has now moved to dismiss the Petition, lodging a host of

jurisdictional objections to enforcement of the Award, or alternatively to stay the case. Finding it

appropriate to stay these proceedings pending the decision of the Paris Court of Appeal, the

Court will grant Uzbekistan's Motion in part without treating its arguments to dismiss the suit

entirely.

I.      **Background**

The underlying controversy stems from Oxus's involvement in two projects related to

mining and exploration of gold deposits in Uzbekistan. On August 31, 2011, it filed a notice of

arbitration against Uzbekistan seeking $1.2 billion for the purported expropriation of its

investments.  See ECF No. 5-2 (Arbitral Award), ¶¶ 60, 1019.  The arbitral panel, sitting in Paris,

issued its Award on December 17, 2015.  Id. at 1.  It found Uzbekistan liable for only

$10,299,572 plus interest that — based on Petitioner's calculations — brings the grand total to

$13,026,908.12.  Id. at 396; see also ECF No. 5-8 (Declaration of Kevin N. Ainsworth), ¶ 5.

On April 26, 2016, Oxus initiated a proceeding before a court in Paris, seeking

recognition of the Award.  See ECF No. 17-13 (Declaration of Andrea Pinna), ¶ 4.  Having

received that recognition, it then filed a request on July 26, 2016, before the Paris Court of

Appeal for partial vacatur of the Award — namely, it sought to set aside certain portions of the

Award denying its claims but to leave intact the portion for which damages were already

awarded.  Id., ¶ 5.  Uzbekistan has naturally opposed; it has also argued that, if the Paris court

were to set aside any of the Award, it should vacate the entire Award, rather than merely the

portion Oxus lost in arbitration.  The parties have submitted several rounds of briefing, and the

Paris Court of Appeal is scheduled to hold a hearing on March 26, 2019.  Id., ¶¶ 7–8.

While these proceedings were pending in Paris, Gretton filed its Petition against

Uzbekistan in this Court in July 2018 seeking to enforce the piece of the Award in which Oxus

prevailed.  See ECF No. 1 (Petition to Confirm Arbitration Award).  It has represented that Oxus

assigned it the proceeds of the Award back in 2012.  Id. at 2–3.  Uzbekistan now moves to

dismiss the Petition on several grounds.  See ECF No. 17 (Motion to Dismiss or Stay).  It has

also moved, in the alternative, for the Court to stay the case pending the outcome of the set-aside

proceedings in Paris.  Id.

## II.     Legal Standard

The Federal Arbitration Act, 9 U.S.C. §§ 201–208, codifies the Convention on the

Recognition and Enforcement of Foreign Arbitral Awards, better known as the New York

Convention.  Pursuant to the Convention, a district court "shall confirm [an] [arbitral] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.  "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' recognized by the Supreme Court[,] . . . the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards."  Belize Social Development Ltd. v. Government of Belize, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 631 (1985)).

Under the Convention, however, district courts do have discretion to stay proceedings if "an application for the setting aside or suspension of the award has been made to a competent authority."  New York Convention art. VI.  Because "the adjournment of enforcement proceedings impedes the goals of arbitration — the expeditious resolution of disputes and the avoidance of protracted and expensive litigation" — "[a] stay of confirmation should not be lightly granted."  Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 317 (2d Cir. 1998).

III.    Analysis

Uzbekistan challenges the Petition to enforce the Award on several bases.  It argues that the Court lacks subject-matter jurisdiction because no exception to immunity has been satisfied under the Foreign Sovereign Immunities Act.  See Mot. at 2.  It also contends that Gretton's efforts to effect service were defective and that personal jurisdiction therefore does not exist.  Id.  Finally, Respondent urges dismissal under the *forum non conveniens* doctrine because France is an adequate alternative forum for adjudication.  Id.  In the event the Court declines to dismiss,

Uzbekistan last maintains that this "case should be stayed pending the outcome of proceedings to set aside the Award." Id. at 3.

Ordinarily, courts must begin by assuring themselves of their own jurisdiction. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94–95 (1998). There are, however, exceptions to that general precept. The Court first concludes that it is proper to treat the stay question without ruling on the jurisdictional issues and then explains why a stay is appropriate here.

A.  Addressing Stay First

Although a court must establish its jurisdiction to hear a case before analyzing any merits issue, see Foster v. Chatman, 136 S. Ct. 1737, 1745 (2016), it may — "when considerations of convenience, fairness, and judicial economy so warrant" — "deny[] audience to a case on the merits" on a non-jurisdictional "threshold ground[]." Sinochem Int'l Co. v. Malaysia Int'l Shipping Co., 549 U.S. 422, 425, 431–32, 436 (2007) (citations omitted). In Sinochem, the Court reasoned that it could make a *forum non conveniens* determination before resolving subject-matter jurisdiction because — while the FNC analysis could "involve a brush with factual and legal issues of the underlying dispute" — it was nonetheless a "threshold, nonmerits issue" since "[r]esolving [it] does not entail any assumption by the court of substantive law-declaring power." Id. at 433 (internal quotation marks and citation omitted); see also Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia, 486 F.3d 1342, 1348 (D.C. Cir. 2007) ("[C]ertain non-merits, nonjurisdictional issues may be addressed preliminarily because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'") (quoting Sinochem, 549 U.S. at 431).

The stay of a petition to enforce an arbitration award, likewise, is a threshold issue that the Court may properly consider before jurisdiction.  Analyzing its propriety involves no question relating to the merits of the underlying dispute.  Indeed, without first resolving outstanding questions about their jurisdiction, both the D.C. Circuit and another district court in this circuit have determined it appropriate to stay such a petition where there were ongoing proceedings related to the award in a foreign jurisdiction.  See Telcordia Technologies, Inc. v. Telkom SA, Ltd., 95 F. App'x 361, 362–63 (D.C. Cir. 2004); Hulley Enterprises, Ltd. v. Russian Fed'n, 211 F. Supp. 3d 269, 277–80 (D.D.C. 2016) ("A stay of proceedings in this case is exactly the type of nonmerits action the Sinochem decision contemplates.").  This Court will follow the same course here because, as the analysis in the next section indicates, a stay will serve several important interests in this case.

B.  Merits of Stay

Uzbekistan contends that a stay is warranted because Oxus, Gretton's assignor, is seeking to set aside the Award in the Paris Court of Appeal.  The Court, Respondent believes, would be wiser to await the outcome there before proceeding.  See Mot. at 19–22.  There is no dispute here that the Court can stay the case under the New York Convention.  See Art. VI (authorizing district courts to "adjourn the decision . . . [i]f an application for the setting aside or suspension of the award has been made to a competent authority"); see also Mot. at 19–20; ECF No. 18 (Opp.) at 18–19.  The only question is whether it should.  In that regard, neither the Convention nor the Federal Arbitration Act elucidates how a court ought to exercise its discretion in weighing a stay.  Courts in this circuit, however, have looked to the six factors set out in the Second Circuit's decision in Europcar, 156 F.3d at 317–18.  See e.g., Hardy Exploration & Production Inc. v. Gov't of India, 314 F. Supp. 3d 95, 105 (D.D.C. 2018); Chevron Corp. v.

Republic of Ecuador, 949 F. Supp. 2d 57, 71–72 (D.D.C. 2013); Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria, 697 F. Supp. 2d 46, 59–60 (D.D.C. 2010).  Given this widespread adoption, and the fact that both parties tailor their arguments to these factors, the Court will follow suit.

Europcar instructs courts to consider:

> (1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
>
> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
>
> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
>
> (4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;
>
> (5) A balance of the possible hardships to the parties . . . ; and
>
> (6) Any other circumstances that could tend to shift the balance in favor of or against adjournment . . . .

156 F.3d at 317–18.  Each side claims the factors as its own.  Uzbekistan, for its part, emphasizes that a stay could avoid "unnecessary protracted litigation" during the pendency of French proceedings and that it would "only be necessary for a modest amount of time."  See Mot. at 21. Gretton, unsurprisingly, takes the opposite position, maintaining that a stay would unduly delay enforcement of an executable judgment without advancing any adjudicative interest.  For the reasons that follow, Uzbekistan gets the better of the argument.

Before jumping into the factors, the Court notes the unusual posture of the stay request in this case. Ordinarily, the party seeking a stay is also the party seeking to set aside the award in parallel foreign proceedings. That such a party would seek a stay is understandable, for it typically hopes that a subsequent victory in foreign proceedings will render the U.S. ones unnecessary. This case is different. Uzbekistan, the party asking for a stay, is <u>not</u> the one that initiated proceedings to set aside the Award; instead, it is the opposite side that is responsible for the foreign proceedings. Given this posture, Uzbekistan's motivations are somewhat different from those of the ordinary stay-seeking party. Its request is presumably based on a desire to avoid defending itself in two fora simultaneously and to limit the likelihood of piecemeal enforcement of the Award in the United States. As the Court will explain, this unusual posture influences the direction of several factors and ultimately favors staying the case.

1. *Objectives of Arbitration*

The first factor, the general objectives of arbitration, weighs in favor of a stay. As noted, arbitration promotes "the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." <u>Europcar</u>, 156 F.3d at 317. Issuing a stay often contravenes these goals, since it typically delays resolution in U.S. courts until the foreign proceedings conclude. <u>See, e.g.</u>, <u>Hardy Exploration</u>, 314 F. Supp. 3d at 106; <u>Gold Reserve Inc. v. Bolivarian Republic of Venezuela</u>, 146 F. Supp. 3d 112, 135 (D.D.C. 2015). Not so here, however. That is because the stay — and, more importantly, the party seeking it — is not responsible for dragging out this litigation. Rather, it is Gretton and Oxus, via their efforts in the French courts, who are the culprits, and those proceedings would not end upon this Court's confirmation of the arbitral award. So, if anyone is delaying "the expeditious resolution" of this dispute and lengthening already "protracted and expensive litigation," it is Gretton. <u>See EDF Intern. S.A. v. YPF S.A.</u>,

676 F. Supp. 2d 317, 318 (D. Del. 2009) (noting that party seeking confirmation of arbitral award "also filed a challenge" to it abroad).

A stay here will, in fact, serve the purposes of arbitration by reducing the likelihood of unnecessary and expensive piecemeal litigation. If the Court were to side with Gretton now and then Oxus were to win on appeal in Paris, one of them could well be back in a U.S. court seeking to enforce a greater award amount and litigating some of the issues raised in this case all over again. That is hardly the kind of efficient dispute resolution that arbitration is meant to serve. Cf. InterDigital Comms., Inc. v. Huawei Invest. & Holding Co., 166 F. Supp. 3d 463, 471 (S.D.N.Y. 2016) (finding stay appropriate given "duplication and delay from pursuing this enforcement proceeding"). It also seems unfair to require Uzbekistan to contest similar issues multiple times in multiple litigations.

In finding that this factor favors a stay, the Court acknowledges that it does not do so unequivocally. The New York Convention favors the immediate enforcement of arbitral awards. See art. III. Back in 2016, Oxus obtained an order from the French courts making the $10 million award immediately executable. See Pinna Decl., ¶ 4. The Award has since apparently passed to Gretton, see ECF No. 17-3 (Mortgage), even while Oxus — presumably funded by Gretton — continues to appeal the claims that it lost in arbitration. See ECF No. 17-5 (Litigation Funding Agreement). Petitioner understandably has an interest in collecting on the Award, which has now lain unredeemed since late 2015. Ultimately, however, that interest is not so substantial as to outweigh Gretton's own responsibility for lengthening the proceedings and creating the possibility of avoidable litigation.

## 2. *Status of Foreign Proceedings*

The second factor — the status of the foreign proceedings and the estimated time for their resolution — weighs strongly in favor of Uzbekistan. All written submissions were due to the Paris Court of Appeal on January 24, 2019, and a hearing is scheduled for March 26, 2019. See Pinna Decl., ¶ 7. Respondent has represented — and Gretton has not contested — that the court typically decides matters within two months of the hearing. Id. The parties can thus expect a decision by the end of May 2019. In the context of the many years of litigation over this matter, for which both parties have been responsible, another four months is a comparatively short time for Gretton to wait. See InterDigital Comms., 166 F. Supp. 3d at 471–72 (finding stay appropriate given mere months until resolution of foreign proceedings); In re Arbitration of Certain Controversies between Getma Int'l & Republic of Guinea, 142 F. Supp. 3d 110, 115–16 (D.D.C. 2015) (finding second factor weighs in favor of stay because proceedings will resolve within year of issuance of opinion).

Gretton replies that the May 2019 timeframe does not account for the possibility of appeals to the French Supreme Court. See Opp. at 21–22. To the extent it suggests that Oxus may appeal, the Court is not especially sympathetic. It is possible, however, that if Uzbekistan loses, it might attempt to lengthen proceedings in some manner. The Court, accordingly, will stay these proceedings only until the Paris Court of Appeal releases its decision in this matter, which it expects will occur in the next several months. At that point it can reweigh the factors depending on how the parties expect to proceed overseas.

## 3. *Scrutiny of Award in Foreign Proceedings*

The third Europcar factor — whether the Award will receive greater scrutiny in foreign proceedings — favors neither side. The issues in the Paris proceedings appear to have little

overlap with those here because they address claims that Oxus <u>lost</u>, which are not (currently) part of the Award Gretton seeks to enforce in this case. Any difference in standard of review thus has little relevance to the need for a stay.

                4.  *Characteristics of Foreign Proceeding*

Though styled as a single factor, the fourth actually involves several related but distinct considerations pertaining to the foreign proceeding. The first of those is whether that proceeding is one to enforce an award (weighing in favor of a stay) or one to set aside an award (weighing against). It is true that the Paris proceeding seeks to set aside the Award. Yet that posture does not weigh against a stay. To understand why, consider the reason stays are disfavored when a foreign proceeding is one to set aside an award. It is, in short, because such a proceeding "might frivolously delay proper enforcement of the Award." <u>Gold Reserve</u>, 146 F. Supp. 3d at 136. Here, though, no concern of frivolous delay on Uzbekistan's part exists because it is not the party that initiated the set aside. This consideration thus does not favor a stay.

The second consideration is whether the foreign proceedings "were initiated before the underlying enforcement proceeding so as to raise concerns of international comity." <u>Europcar</u>, 156 F.3d at 318. This one unquestionably favors Uzbekistan. Oxus challenged the arbitral award in the Paris Court of Appeal on July 26, 2016. <u>See</u> Pinna Decl., ¶ 5. Yet Gretton, as noted, did not file the Petition in this Court until two full years later. <u>See</u> Petition. (That delay, furthermore, was not attributable to the assignment of rights to Gretton, which occurred in 2012 and was noticed to Uzbekistan in January 2016.) To intervene and issue a decision on the enforcement of the Award now when those proceedings are so near to wrapping up would raise significant international-comity concerns. <u>See</u> <u>Hulley Enterprises</u>, 211 F. Supp. 3d at 287 (explaining that "comity considerations support granting a stay" in part because "foreign

proceedings were initiated prior to the instant action"); <u>see also</u> <u>Telcordia</u>, 95 F. App'x at 362–63 (finding stay appropriate when foreign proceedings began before suit filed in district court). This consideration thus strongly counsels in favor of staying the Court's pen.

Third, waiting may be appropriate if the proceedings abroad "were initiated by the party now seeking to enforce the award in federal court." <u>Europcar</u>, 156 F.3d at 318. Since Petitioner's assignor, Oxus, is the one pursuing the foreign proceedings — and Gretton appears to be funding its efforts there, <u>see</u> Litigation Funding Agreement — this one favors Respondent.

The fourth and final consideration is whether the foreign proceedings "were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute." <u>Europcar</u>, 156 F.3d at 318. The intuition here is that a stay should not be granted if the party seeking it initiated the foreign proceedings merely to delay resolution of the case. <u>See</u> <u>Gold Reserve</u>, 146 F. Supp. 3d at 136. Because Uzbekistan is not the one that initiated the proceedings abroad, it could not have acted therein to delay the case. Gretton thus finds no recourse on this consideration either.

### 5. *Balance of Hardships*

The fifth factor addresses the balance of possible hardships to the parties. <u>Europcar</u>, 156 F.3d at 318. Not surprisingly, both sides argue that this tips in their favor. Uzbekistan emphasizes that it will have to expend significant resources defending itself simultaneously here and in Paris and that Gretton will suffer little harm from just a few months' more delay. <u>See</u> Mot. at 22. Petitioner, conversely, contends that "a foreign sovereign of immense resources is not substantially harmed by the enforcement of the award" and that there will be no further litigation in this Court because Uzbekistan lacks any basis to defend against the Award. <u>See</u> Opp. at 23.

The Court finds that the balance again favors the country. To be sure, Respondent is a foreign sovereign with substantial resources, and the $10 million arbitral award has been executable for several years. At the same time, Gretton has not explained what particular harms it will suffer from a several-month stay. Given Petitioner's responsibility for lengthening proceedings abroad, and the risks of duplicative litigation over enforcement of the Award arising from them, the Court finds that the balance tips in favor of a short stay. Taking this course conserves judicial resources — the jurisdictional issues Uzbekistan raises are thorny and deserving of substantial attention. It also, more importantly, conserves the parties' resources. Even if the Court sided with Gretton and also refused to allow further briefing on the merits of confirming the Award, Respondent would be within its rights to appeal to the D.C. Circuit. It seems improbable that the matter would be resolved before the Paris Court of Appeal issues its decision. Ruling now would be imprudent while also doing little to advance Gretton's interests in immediate satisfaction of the Award. See InterDigital Comms., 166 F. Supp. 3d at 471 (noting that "[w]hatever result this Court reached on the merits would be subject to appeal with the associated delay and expense"). In all, the balance easily favors a short stay.

6. *Other Considerations*

The sixth and final factor looks at "any other circumstances" that might shift the balance. See Europcar, 156 F.3d at 318. Two such circumstances are worthy of note, both favoring Gretton slightly. The first is that the Court is unsure how likely the Paris proceedings are to overturn the portion of the Award subject to the enforcement Petition in this case. That risk may well be little: Oxus has there appealed certain of the issues it lost in arbitration, and Uzbekistan has not cross-appealed. See Pinna Decl., ¶¶ 4–5. Still, Respondent has argued in the alternative that if the Paris court were to side with Oxus on appeal, it should vacate the entire arbitral award.

Id.  So there remains at least some possibility that the underlying Award in this case will be vacated.  The relevant point, however, is that the Award before this Court may not be going anywhere.  That consideration weighs against a stay, as it means there is less concern about conflicting decisions or orders between the courts.  It is not enough, however, to tip the balance in Gretton's favor.  As noted, numerous values counsel in favor of a stay, including concerns about duplicative enforcement proceedings in U.S. courts, the unfairness to Uzbekistan of having to defend itself simultaneously in two fora, and the international-comity issues associated with issuing a decision mere months before the Paris court is likely to do so.

The second circumstance is that Gretton is not technically the same party involved in the foreign proceedings.  That is, instead, its assignor, Oxus.  While this might mitigate in some small way the concerns the Court raised about Petitioner's responsibility for the foreign proceedings, it does not affect the conclusion.  Oxus is Gretton's assignor, and Gretton presumably will receive the benefits, if any, of the set-aside proceedings in Paris.  Indeed, while the Court does not have the entire litigation funding agreement before it, Gretton may well be funding or controlling Oxus's continued actions in the Paris courts.  See Litigation Funding Agreement.  Needless to say, it makes sense to treat them as one when their interests and activities are so closely aligned.

## IV.    Conclusion

For these reasons, the Court will grant Respondent's Motion and stay proceedings until the Paris Court of Appeal has issued its ruling.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 6, 2019