UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRETTON LIMITED,<br><br>    Petitioner,<br><br>    v.<br><br>REPUBLIC OF UZBEKISTAN,<br><br>    Respondent. | Civil Action No. 18-1755 (JEB) |

## MEMORANDUM OPINION

    Petitioner Gretton Ltd. seeks to enforce a foreign arbitral award issued in Paris under 9 U.S.C. § 207 and the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, better known as the New York Convention. Before addressing what it perceives as the infirmities of such award, Respondent Republic of Uzbekistan offers multiple challenges to the jurisdiction of this Court to even hear the matter. First, Uzbekistan argues that this Court lacks personal jurisdiction over it because it was never served in strict compliance with 28 U.S.C. § 1608. Second, it contends that subject-matter jurisdiction does not exist because Gretton's claim does not meet the requirements of the arbitration exception to the Foreign Sovereign Immunities Act. Finally, it maintains that, even if this Court finds it has jurisdiction, it should dismiss the case under the doctrine of *forum non conveniens*. Although it finds the last two arguments wanting, the Court will require a hearing on the first. It will, accordingly, deny in part Uzbekistan's Motion.

## I. Background

The Court recited the facts of the underlying controversy in its February 2019 Opinion, but sees no harm in briefly retracing its steps. See Gretton Ltd. v. Republic of Uzbekistan, 2019 WL 464793, at *1 (D.D.C. Feb. 6, 2019).

On August 31, 2011, an entity named Oxus Gold filed a notice of arbitration against Uzbekistan seeking $1.2 billion for the purported expropriation of its investments. Id. On December 17, 2015, the arbitral panel, sitting in Paris, found Uzbekistan liable to Oxus for just over $13 million. Id. Oxus appealed that decision, but on May 14, 2019, the Paris Court of Appeal dismissed that appeal. See ECF No. 28 (Joint Status Report) at 3. Oxus consequently decided not to further press the issue. See ECF No. 31 (Gretton Supplemental Status Report) at 1.

While the appeal unfolded in Paris, Gretton, as purported assignee of Oxus's, filed a Petition against Uzbekistan in this Court in July 2018 seeking to enforce the piece of the Award in which Oxus had prevailed. See ECF No. 1. Uzbekistan subsequently moved to dismiss the Petition on several grounds or, in the alternative, to stay the case. See ECF No. 17 (MTD). On February 6, 2019, this Court stayed the case pending the outcome of the proceedings in Paris. See Gretton Ltd., 2019 WL 464793, at *7. With those now concluded, the Court considers Uzbekistan's jurisdictional challenges.

## II. Legal Standard

"[T]he FSIA is the sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). Under the Act, "'[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which' subject matter jurisdiction exists . . ., so long as the defendant was properly served." I.T.

Consultants, Inc. v. Islamic Republic of Pakistan, 351 F.3d 1184, 1191 (D.C. Cir. 2003) (quoting 28 U.S.C. § 1330(b)).

The Act lists, "in hierarchical order," four methods for serving a foreign state. Republic of Sudan v. Harrison, 139 S. Ct. 1048, 1054 (2019). The summons and complaint may be delivered, first, "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision," 28 U.S.C. § 1608(a)(1), or, second, "in accordance with an applicable international convention on service of judicial documents." Id., § 1608(a)(2). If the countries lack such agreements, respondents may be served through a third method, which involves sending the summons, complaint, Notice of Suit, a copy of the FSIA, and translations into the official language of the foreign state, "by any form of mail requiring a signed receipt . . . to the head of the ministry of foreign affairs of the foreign state concerned." Id., § 1608(a)(3); see also 22 C.F.R. § 93.2(e) (requiring inclusion of copy of FSIA). And "if service cannot be made within 30 days" under that method, petitioners may resort to method four: sending those same documents to the Secretary of State for transmittal "through diplomatic channels to the foreign state." 28 U.S.C. § 1608(a)(4); see also Harrison, 139 S. Ct. at 1054.

Regarding subject-matter jurisdiction, "a foreign state is presumptively immune from the jurisdiction of United States courts[] unless a specified exception applies." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). Because "subject matter jurisdiction in any such action depends on the existence of one of the specified exceptions[,] . . . [a]t the threshold of every action in a District Court against a foreign state, . . . the court must satisfy itself that one of the exceptions applies." Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493–94 (1983).

Relevant here is the FSIA exception for actions to confirm certain arbitration awards. See 28 U.S.C. § 1605(a)(6). Specifically, foreign sovereigns are not immune from suits

> in which the action is brought[ ] either to enforce an agreement made
> by the foreign state with or for the benefit of a private party to submit
> to arbitration all or any differences which have arisen or which may
> arise between the parties with respect to a defined legal relationship
> . . . or to confirm an award made pursuant to such an agreement to
> arbitrate, if . . . the agreement or award is or may be governed by a
> treaty or other international agreement in force for the United States
> calling for the recognition and enforcement of arbitral awards.

Id. Notably, once a petitioner produces evidence showing that an FSIA exception applies, "the defendant bears the burden of proving that the . . . allegations do not bring its case within a statutory exception to immunity." Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) (citing Transamerican S.S. Corp. v. Somali Democratic Republic, 767 F.2d 998, 1002 (D.C. Cir. 1985)); accord Chevron Corp. v. Ecuador, 795 F.3d 200, 204 (D.C. Cir. 2015).

Finally, dismissal under the doctrine of *forum non conveniens* is a "non-merits threshold inquiry," which "reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." MBI Grp., Inc. v. Credit Foncier du Cameroun, 558 F. Supp. 2d 21, 26 (D.D.C. 2008) (quoting Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 429 (2007)). Applying *forum non conveniens* is a two-fold inquiry. First, the court asks whether an adequate alternative forum exists. If so, it next looks to a set of public and private factors to determine if they favor dismissal. "If the balance favors the foreign forum, and if the Court is convinced that plaintiff effectively can bring its case in the alternative forum, the Court may dismiss the case on grounds of *forum non conveniens*." KPMG Fin. Advisory Servs. Ltd. v. Diligence LLC, 2006 WL 335768, at *1 (D.D.C. Feb. 14, 2006) (citing Pain v. United Techs. Corp., 637 F.2d 775, 785–86 (D.C. Cir. 1980)). In asserting the doctrine, "[t]he defendant has

the burden on all aspects of a motion to dismiss on *forum non conveniens* grounds, including the obligation to establish as a prerequisite that an adequate alternative forum exists." Id.

III. **Analysis**

Uzbekistan raises three threshold challenges. The Court begins with personal jurisdiction before moving to subject-matter jurisdiction and concluding with *forum non conveniens*.

A. Personal Jurisdiction

Uzbekistan initially contends that this Court lacks personal jurisdiction over it because it was never properly served. It makes two arguments in support. First, it asserts that Gretton failed to serve it with the necessary documents — namely, "a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state," as well as a copy of the FSIA. See 28 U.S.C. § 1608(a)(3); 22 C.F.R. § 93.2(e); see also MTD at 15. Second, it believes that the service package was not "addressed and dispatched by the clerk of the court," as required by statute. See 28 U.S.C. § 1608(a)(3); see also MTD at 15.

In response to a motion to dismiss for improper service, "[t]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 [of the Federal Rules of Civil Procedure] and any other applicable provision of law." Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987) (citation omitted); see also Fed. R. Civ. P. 12(b)(5). "A signed return of service," however, "constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence." Roland v. Branch Banking & Tr. Corp., 149 F. Supp. 3d 61, 65 (D.D.C. 2015) (quoting Gates v. Syrian Arab Republic, 646 F. Supp. 2d 79, 85–86 (D.D.C. 2009)); see also Pollard v. District of Columbia,

5

285 F.R.D. 125, 127–28 (D.D.C. 2012) (applying rebuttable presumption where defendants challenged that person served was authorized agent). Where litigants rely on dueling affidavits to prove or contest completed service of process, the Court must hold an evidentiary hearing to resolve the conflict. See Durukan Am., LLC v. Rain Trading, Inc., 787 F.3d 1161, 1162 (7th Cir. 2015); cf. Wash. Post Co. v. U.S. Dep't of Health & Human Servs., 865 F.2d 320, 326 (D.C. Cir. 1989) (vacating summary judgment on ground that dueling affidavits created "controverted factual issue"); Sears, Roebuck & Co. v. Gen. Servs. Admin., 553 F.2d 1378, 1382 (D.C. Cir. 1977) (similar).

Uzbekistan's first challenge has legs; its second does not. Dispensing with the latter, the Court finds that the service package was properly "addressed and dispatched by the clerk of the court," as required by the Act. See 28 U.S.C. § 1608(a)(3). While Uzbekistan argues that service is defective because Gretton provided a pre-addressed label to the Clerk, see ECF No. 19 (Resp. Reply) at 19, the statute does not mandate that the Clerk herself physically type up the address label — only that the package be labeled by and sent from the Clerk's office. See 28 U.S.C. § 1608(a)(3). Here, the Clerk's office did in fact affix the DHL Waybill and send that package to Uzbekistan. See ECF No. 18 (Pet. Opp.), Attach. 1 (Declaration of Kevin N. Ainsworth), ¶¶ 9–10; Pet. Opp., Attach. 6 (Declaration of Dennis L. Tonic), ¶ 2; ECF No. 10 (Clerk Certificate). That is all the statute requires, and Gretton for now remains in the clear.

Uzbekistan's other contention — that it never received full English-language copies of the Notice of Suit and of the FSIA — is more serious. As the challenged party, Gretton bears the initial burden of proving the validity of its service. It has done so here by producing a Certificate of Mailing signed by a Deputy Clerk, which certifies under penalty of perjury that she dispatched all the documents at issue to the Uzbekistan Ministry of Foreign Affairs. See Clerk Certificate.

Gretton has also produced a DHL Waybill and a signed return of service, which show the package was delivered to, and signed for by, someone at the Ministry. See Pet. Opp., Attach. 5 (Waybill and Signed Delivery Slip). Finally, counsel for Gretton submitted an affidavit certifying that it had sent the Clerk of the Court all the pertinent documents for inclusion in the package. See Ainsworth Decl., ¶ 8. Yet, the Court notes that neither the Clerk's affidavit nor counsel's amended return-of-service affidavit specifically mentions delivering copies of the FSIA to Uzbekistan. Counsel only says in its final affidavit that it included those copies. See Clerk Certificate; Waybill and Signed Delivery Slip; Ainsworth Decl., ¶ 8.

Not to be outdone, Uzbekistan answered with evidence of its own. It produced a sworn affidavit from the Ministry of Foreign Affairs clerk who received and processed the DHL package, who attests that several documents were missing — namely, full English copies of the Notice of Suit and of the FSIA. See Resp. Reply, Attach. 1 (Declaration of Dilfuza Abdukayumova), ¶¶ 7–8. In support, Uzbekistan attached scanned images of the documents it received and pointed out the missing pages. See MTD, Attachs. 8–12. As "neither substantial compliance, nor actual notice, suffice[s] under section 1608(a)(3)," omission of these documents would render service incomplete. See Barot v. Embassy of the Republic of Zambia, 785 F.3d 26, 27 (D.C. Cir. 2015).

The question before the Court, then, is whether Gretton's evidence of service is sufficiently compelling to overcome contrary evidence provided by Uzbekistan. The answer turns on resolving the parties' directly dueling affidavits. Gretton insists it sent all the requisite materials to Uzbekistan; Uzbekistan rejoins that the materials were not in the package it received. Because the DHL package was not tampered with, see Waybill and Signed Delivery Slip, the parties' representations seem to be in direct conflict with each other. If Gretton's are

7

correct, service was properly effected; if Uzbekistan's are correct, service was not. Resolving that conflict requires a hearing. See Durukan Am., LLC, 787 F.3d at 1164. Given the logistics, the Court would permit Respondent's witness to appear via videoconference.

If it wishes to avoid the uncertainty of such a hearing, Gretton is alternatively free to re-attempt service under 28 U.S.C. § 1608(a)(3). Uzbekistan overreaches in arguing that the consequence of improper service should be either dismissal or a requirement that Gretton attempt service through the onerous diplomatic process described in 28 U.S.C. § 1608(a)(4). See Resp. Reply at 19–20. Dismissal is improper because, even on Uzbekistan's facts, Gretton's attempt at service "came very close to satisfying the Act's requirements," and thus "[t]here clearly 'exists a reasonable prospect that service can be obtained.'" Barot, 785 F.3d at 29 (quoting Novak v. World Bank, 703 F.2d 1305, 1310 (D.C. Cir. 1983)). For the same reasons, the Court will not find that service "cannot be made" under § 1608(a)(3); indeed, the facts indicate that service could be achieved under that method were Gretton allowed to re-attempt it. The Court expects that, in the interest of judicial efficiency and given that it has done so once before, Uzbekistan will accept service by this method.

The parties should inform the Court within a week how they wish to proceed: specifically, whether an evidentiary hearing will be necessary or whether Gretton intends to re-attempt service under § 1608(a)(3). Assuming that Gretton will ultimately perfect service, the Court finds it worthwhile to address other jurisdictional issues here.

B. Subject-Matter Jurisdiction

In bringing suit here, Gretton asserts a waiver of Uzbekistan's sovereign immunity under the FSIA's arbitration exception. See 28 U.S.C. § 1605(a)(6). Respondent disagrees, contending that such exception does not apply because Uzbekistan had only agreed to arbitrate with Oxus,

8

not Gretton. Finding Gretton has the better of the argument, the Court holds that it has subject-matter jurisdiction.

Courts in this district have read the FSIA's arbitration exception to require only that an award be made pursuant to an agreement to arbitrate, irrespective of whether the claimant is an assignee. For example, in Balkan Energy Ltd. v. Republic of Ghana, 302 F. Supp. 3d 144 (D.D.C. 2018), the court considered the jurisdictional effect of the assignment of a final arbitral award from Balkan Ghana to Balkan UK. Id. at 154. Respondent Ghana challenged the validity of the assignment and argued that the court consequently lacked subject-matter jurisdiction to enforce the award. Id. The court disagreed. "Nothing in Section 1605(a)(6)," it held, "requires a court to resolve whether an arbitration award was validly assigned as a necessary precondition to recognizing subject-matter jurisdiction under the arbitration exception." Id. That holding is in harmony with the reasoning of other courts in this district, as affirmed by the D.C. Circuit; other courts that have considered the issue agree as well. See, e.g., Belize Soc. Dev. Ltd. v. Gov't of Belize, 5 F. Supp. 3d 25, 34 n.8 (D.D.C. 2013) ("I am aware of [no case] in which a foreign state's amenability to suit under the FSIA turns on the validity of an assignment to the plaintiff."), aff'd, 794 F.3d 99 (D.C. Cir. 2015); Blue Ridge Invs., LLC v. Republic of Argentina, 902 F. Supp. 2d 367, 375 n.7 (S.D.N.Y. 2012) ("Nothing in the plain language of [28 U.S.C. § 1605(a)(6)] suggests that an action 'to confirm an award made pursuant to . . . an agreement to arbitrate' must be brought by the party that entered into the arbitration agreement with the foreign state.") (quoting 28 U.S.C. § 1605(a)(6)), aff'd, 735 F.3d 72 (2d Cir. 2013).

That reasoning is sound, and this Court adopts it. Again, the FSIA arbitration exception confers jurisdiction over suits

> either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any

> differences which have arisen or which may arise between the parties with respect to a defined legal relationship . . . or to confirm an award made pursuant to such an agreement to arbitrate.

28 U.S.C. § 1605(a)(6). Nothing in the statute requires that the original private party to that arbitration bring the action for a court to have jurisdiction; indeed, the statute's locution "with <u>or for the benefit of</u>" naturally broadens its reach beyond parties the state directly agreed to arbitrate with. <u>See</u> 28 U.S.C. § 1605(a)(6) (emphasis added). Gretton has thus met its initial burden of showing that the FSIA exception applies.

Uzbekistan offers two rejoinders. First, it argues that the plain language of the FSIA exception only confers jurisdiction over claims by parties to an original arbitration, not by assignees. <u>See</u> MTD at 8–10. It emphasizes that the phrases "differences . . . between the parties" and "defined legal relationship" indicate that the exception only applies where a state directly agreed to arbitrate with a petitioner. <u>See</u> Resp. Reply at 6–7. This is a bold argument, as courts in this district — with the blessing of the D.C. Circuit — have time and again found jurisdiction over arbitration assignees' confirmation suits. <u>See, e.g.</u>, <u>Balkan Energy</u>, 302 F. Supp. 3d at 154–55; <u>Belize Soc. Dev. Ltd.</u>, 5 F. Supp. 3d at 33–34, <u>aff'd</u>, 794 F.3d 99 (D.C. Cir. 2015). Their reasoning applies in full force here: nothing in the language respondents highlight requires that a suit be brought by a party with whom a respondent agreed to arbitrate. The cases Uzbekistan cites present only instances where a respondent <u>country</u>, rather than a petitioning company, was absent from the original arbitration. <u>See, e.g.</u>, <u>DRC Inc. v. Republic of Honduras</u>, 71 F. Supp. 3d 201, 207–08 (D.D.C. 2014); <u>First Inv. Corp. v. Fujian Mawei Shipbulding, Ltd.</u>, 703 F.3d 742, 756 (5th Cir. 2012), <u>as revised</u> (Jan. 17, 2013); <u>see also</u> Resp. Reply at 8. Uzbekistan's first argument thus holds no water.

It next challenges the contractual validity of the actual assignment from Oxus to Gretton. See MTD at 10–13. Given the above reasoning, this argument is best understood as protesting the merits of Gretton's claim rather than this Court's jurisdiction to hear it. As such, the Court need not consider it at this juncture.

## C. *Forum Non Conveniens*

Last up, Uzbekistan maintains that even if this Court properly has jurisdiction, it should dismiss the claim under the doctrine of *forum non conveniens*. Id. at 16–19. Under that doctrine, a court "must decide (1) whether an adequate alternative forum for the dispute is available and, if so, (2) whether a balancing of private and public interest factors strongly favors dismissal." Agudas Chasidei Chabad of U.S. v. Russian Fed'n, 528 F.3d 934, 950 (D.C. Cir. 2008) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n. 22 (1981)). A court only progresses to the second inquiry if the first is satisfied — that is, if there exists an adequate alternative forum for the dispute. Id.

Here, Uzbekistan's argument is squarely foreclosed by binding circuit precedent, which holds that no adequate alternative foreign forum exists for domestic enforcement of an arbitration claim. In TMR Energy Ltd. v. State Prop. Fund of Ukraine, 411 F.3d 296 (D.C. Cir. 2005), the D.C. Circuit held that the doctrine of *forum non conveniens* does not apply to enforcement of arbitral awards against foreign nations in the United States. Id. at 303–04. The court reasoned that only American courts may attach commercial property of foreign sovereigns located in the United States and, consequently, that no other court may provide the requested relief. Id. at 303. Petitioners need not show that the foreign sovereign has attachable property in the United States, held the court, because the country "may own property here in the future." Id.

The court thus found that FNC challenges to arbitral confirmation suits fail at the first step of the analysis. Id. at 304.

The D.C. Circuit has stood by TMR Energy's holding. See BCB Holdings Ltd. v. Gov't of Belize, 650 F. App'x 17, 19 (D.C. Cir. 2016) (finding FNC argument "squarely foreclosed by our precedent" because "[i]n [TMR Energy], we held that the doctrine of *forum non conveniens* does not apply to actions in the United States to enforce arbitral awards against foreign nations"). District courts have time and again applied that holding as well. See, e.g., Balkan Energy Ltd., 302 F. Supp. 3d at 155 ("The D.C. Circuit continues to apply TMR, and so too must this court."); Belize Soc. Dev. Ltd., 5 F. Supp. 3d at 34 ("[TMR Energy] is the controlling law in our Circuit, and I will therefore apply it faithfully.").

Uzbekistan attempts to sidestep this formidable precedent. First, it suggests that this Court instead follow the Second Circuit's ruling in Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488 (2d Cir. 2002). See Resp. Reply at 20. Yet even if this Court believed the Second Circuit's holding more persuasive than our own precedent, its hands are tied. See Belize Soc., 5 F. Supp. 3d at 34 n.9 ("TMR Energy is binding, unlike Second Circuit case law."). Second, Uzbekistan's argument that it lacks property in the United States, see Resp. Reply at 21, is equally unavailing given the D.C. Circuit's directly contrary reasoning. See TMR Energy, 411 F.3d at 303 ("Even if the SPF currently has no attachable property in the United States, however, it may own property here in the future, and TMR's having a judgment in hand will expedite the process of attachment."). The Court thus sides with Gretton here and will not dismiss the suit on *forum non conveniens* grounds.

D. Further Merits Briefing

The parties last disagree over next steps. Gretton argues that Uzbekistan should have asserted all available defenses in its response and has thus waived any merits arguments. See Pet. Opp. at 25–27. Uzbekistan disagrees, saying that it should first raise jurisdictional questions and then, only if necessary, file a merits brief. See Resp. Reply at 2–5.

"[M]otions to enforce arbitral awards should proceed under motions practice." TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 940 (D.C. Cir. 2007); see also 9 U.S.C. § 6 (specifying that claims to confirm arbitral awards "shall be made and heard in the manner provided by law for the making and hearing of motions"). As a consequence, Uzbekistan should have asserted all its arguments at once, rather than in "piecemeal fashion" as it has here. See Balkan Energy Ltd, 302 F. Supp. 3d at 149 n.2. Nonetheless, while including all arguments would certainly have been preferable, given the jurisdictional hiccups left for resolution, the Court will allow the parties further briefing if service is found to be perfected. Cf. id. at 149 (offering petitioners option to submit additional briefing); Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 879 n.6 (1998) (noting district court's authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). The Court reminds the parties, however, that "[c]onfirmation proceedings under the Convention are summary in nature, and the court must grant the confirmation unless it finds that the arbitration suffers from one of the defects listed in the Convention." Argentine Republic v. National Grid Plc, 637 F.3d 365, 369 (D.C. Cir. 2011) (citation omitted).

**IV.     Conclusion**

For these reasons, the Court will deny in part Uzbekistan's Motion to Dismiss and order a hearing to resolve disputed jurisdictional facts, subject to representations from Gretton on how it wishes to proceed with service. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  July 30, 2019